Mrs. Audrey Noel MINOR, Edwin C. Minor, Clyde R. Minor, Jr., Joe W. Dunn, and Eugene F. Dunn

v.

PAN AMERICAN PETROLEUM CORPORATION.

Civ. A. No. 8112.

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 6, 1962.

Cook, Clark, Egan, Yancey & King, Shreveport, La., for plaintiffs.

Norton Standeven, Oklahoma City, Okl., Robert K. Mayo, Shreveport, La., Simon, Carroll, Fitzgerald & Fraser, Shreveport, La., for defendant.

HUNTER, District Judge.

This case, pegged on diversity, was tried to the Court. Plaintiffs are the owners of mineral interests in certain land situated in Caddo Parish, Louisiana. Defendant is the holder of an oil and gas lease upon the property owned by plaintiffs. The object of the action is to cancel this lease, or in the alternative, to recover damages for the breach by defendant of the obligations imposed upon it under the lease.

The property is situated in an area known as the Greenwood-Waskom Field and is productive of natural gas and condensate. Insofar as is material here, the productive sand is designated as the Cotton Valley "D" Sand. In this area this sand is situated some 8,560–8,630' below sea level.

The complainants here had leased their property for oil and gas development on April 17, 1953. This lease was acquired by defendant on August 24, 1953. On March 23, 1955, the Commissioner of Conservation of the State of Louisiana issued its Order No. 270B, setting up a system of drilling units for the "D" Sand, of approximately 640 acres each. Pursuant to this order the subject property fell within the 640-acre unit consisting of the West Half of Section 35 and the East Half of Section 34, Township 17N, Range 16W, Caddo Parish, Louisiana. This unit was subsequently designated as the Minor Unit.

On November 10, 1955, defendant and other lease owners within the Minor Unit joined in an operating agreement setting forth the manner in which they proposed to develop the unit. On December 30, 1955, these same parties executed a conventional pooling agreement, pooling their leases within the unit. The pooling agreement further stipulated that Pan-American Petroleum Corporation would be the "operator of the unit development, and as such, in charge of all actual drilling, completion and production operations." Drilling operations were commenced on December 12, 1955, and carried through to a depth sufficient to test the "D" Sand. Thereafter, it was proposed that the well should be drilled deeper to test the "Davis Sand," which lay at some 9,060'. This proposal was objected to by owners of approximately 37 per cent of the total lease interest in the unit. However, the dissenters did agree for the majority to drill the well and carry them, with the understanding that in the event of production the dissenters' share of

88

the cost would be paid back 150 percent out of production. Drilling operations were completed to test the Davis Sand, but no production was discovered below the Cotton Valley "D" Sand and the well was eventually plugged back to a depth of 8,650′, or just below the Cotton Valley "D" Sand. Beginning in February of 1956, efforts were made to complete for production in the "D" Sand, and it was ultimately classed as completed in August of 1956.

■ The Court finds that it was not negligence, nor was it imprudent, for the operators to explore depths below the "D" Sand. It is common knowledge that in multiple pool fields such as this field was, wells are often drilled to depths sufficient to test the deeper prospects, and then plugged back to shallower productions.

"Minor" has been and is classified as a "deficient well"; that is, it is unable to produce the maximum amount of gas permissible for a well unit under the regulations of the Louisiana Conservation Department. The record further reveals that of the 14 wells in the southern portion of the field (and this is the portion of the field where the Minor Unit is located), not one averaged the daily average allowable. One well has been abandoned; two produced considerably less than Minor, and two produced just a very little more.

The production from Minor has been as follows:

    1957—195,607,000 cubic feet
    1958—184,841,000 cubic feet
    1959—146,721,000 cubic feet
    1961— 89,000,000 cubic feet

Four units directly offsetting the Minor Unit, namely, the Dees Unit to the West, the Baker Unit to the East, the Hill Unit to the Northeast and the Flournoy Unit to the Northwest, produced as follows:

|      | Dees | Baker | Hill | Flournoy |
|------|-------|--------|-------|----------|
| 1957 | 242,951 | — | 478,645 | 478,433 |
| 1958 | 274,308 | 210,185 | 468,623 | 451,491 |
| 1959 | 267,538 | 279,734 | 439,946 | 443,199 |
| 1961 | 281,000 | 252,000 | 456,000 | 437,000 |

It is plaintiffs' contention that the alleged deficient production of the Minor Unit well and the variation between that production and that of the offsetting units is the result of damage caused by defendant in the course of the well's completion. Plaintiffs further contend that as a result of this damage, the natural gas and condensate beneath their property is not being produced on an equal basis with other wells in the field, but on the contrary is being drained to other portions of the field. Plaintiffs contend that the defendant, fully conscious of the fact that the obvious productive area of a sand was at the interval 8,567–8,577′ did, for some unexplained reason, perforate the well at the interval 8,579–8,598′. Plaintiffs further say that as a result of this the perforations lead to a predictable result of water which caused the necessity of squeezing, which in turn blocked off the permeable sand and is the cause of the deficient well. Mr. McCann, plaintiffs' chief witness, stated:

"The squeezing of cement into the perforations at various times initially affected the gas-bearing sand productivity before it accomplished the sealing off of the channel, so that after all the operations had been completed, the well which had been capable of producing 1.470 million cubic feet per day with a flowing pressure of 1,900 pounds per square inch, was capable of producing only 1.25 million cubic feet at

a theoretical pressure of atmospheric pressure."

This Court finds that defendant's actions in the drilling completions and operations of the well were normal and reasonable under the circumstances, and that defendant acted as a prudent administrator. It is true that the well has been a disappointment to both plaintiffs and defendant, but we do believe that defendant has made every reasonable effort to increase the production.

The Minor well is in an edge unit in the southeast portion of the field, with the gas-water contact at or near the southeast edge of the unit. The well has only 9½ feet of net effective sand. Of all the wells located south of the line drawn east and west across the field along the north line of the Minor Unit, only one well has less, or as little, effective sand as the Minor well. The four wells which plaintiffs say are draining the Minor well range in net effective sand thickness from 19 feet for the Pan-American-Baker to 46 feet for the Union Producing Company-Flournoy well. The Minor well was properly located according to the then available information, and its upstructure on the unit almost as far as the tolerance under the existing Commissioner's orders permits.

The average allowable for a 640-acre unit during that period was 1,180 MCF per day. The wells located south of the line hereinabove described produced daily averages as follows:

| WELL NAME | LOCATION | DAILY AVERAGE IN MCF |
|---|---|---|
| Union-Querbes | Sec. 17–16N–16W | 607 |
| Ark-La Gas-Cooke | Sec. 17–17N–16W | 347 |
| Ark-La Gas-Hudson | Sec. 8–16N–16W | 923 |
| Feazel-Hudson | Sec. 8–16N–16W | 203 |
| Feazel-Agurs | Sec. 9–16N–16W | 307 |
| Ark-La Gas-Burke | Sec. 6–16N–16W | 1018 |
| Ark-La Gas-Burke | Sec. 5–16N–16W | 148 |
| Ark-La Gas-Campbell | Sec. 4–16N–16W | 1159 |
| Lyons, Logan-Ultima Thule | Sec. 3–16N–16W | 0 (abandoned) |
| Pan American-Soniat | Sec. 31–17N–16W | 859 |
| Pan American-Johnson | Sec. 32–17N–16W | 1084 |
| Hunt-Dees | Sec. 33–17N–16W | 795 |
| Pan American-Minor | Sec. 34–17N–16W | 276 |
| Pan American-Baker | Sec. 35–17N–16W | 591 |

We find that the deficiency of all these wells, as well as the Minor Unit well, is due to low reservoir capacity.

DAMAGES

Plaintiffs have offered no reservoir information except such as may be taken from his net sand map (Exhibit P–2). Instead, as proof of damage, they rely entirely upon a comparison of the production from the Minor well with that of the wells on the four adjoining units. From this they urge that because Minor was not capable of producing a full allowable, and since gas is mobile and migrates from one point to another, in accordance with pressuring gradients, gas which should have been produced by Minor is being produced by other wells in the field.

We feel that plaintiffs have completely ignored any consideration of plaintiffs' legal share of the pool's production on a volumetric basis, as the law envisions. The Net Sand Map (P–2) shows "the net effective sand" which plaintiffs credit

to each of the wells with which the Minor is compared:

| The Well | Net Effective Sand | |
| --- | --- | --- |
| Flournoy Well | 46 | feet |
| Hill Well | 44 | feet |
| Baker Unit Well | 19 | feet |
| Dees Unit Well | 26 | feet |
| Minor Unit Well | 9½ | feet |

In comparison to Minor, Flournoy has 4.8 times the net effective sand; Hill, 4.6 times; Baker, 2 times; and Dees, 2.7 times.

LSA:R.S. 30:9(D) defines a just and equitable share of the oil and gas in a pool as that part of the authorized production of the pool * * * which is substantially in the proportion that the quantity of *recoverable* oil and gas in the developed area of his tract in the pool bears to the *recoverable* oil and gas in the total developed pool insofar as the amounts can be properly ascertained.

On the basis of the relative sand thicknesses it is apparent that during the periods 1957 through 1959, Flournoy, with 4.8 times the gas in place, produced only 2.6 times the volume of Minor. Hill, with 4.6 times the gas in place, produced only 2.65 times the volume of Minor. Baker, with two times the gas in place, produced only 1.48 times the volume of Minor. Dees, with 2.7 times the gas in place, produced only 1.3 times the volume of Minor. The figures for 1961 revealed that Flournoy produced 4.9 times more than Minor; Hill produced 5.1 times more than Minor; Baker produced 2.83 times as much; and Dees 3.1 times as much as Minor. These figures are certainly not exact but they are about the best that can be arrived at on this record and require a finding that plaintiffs have not proven that they are not getting their share of the production within the meaning of the Louisiana law.

We conclude that Minor has produced and is producing in paying quantities. We conclude that plaintiffs have not proven that defendant has breached its obligations under Article 2710 of the LSA–Civil Code. We conclude that plaintiffs have not proven that the manner of drilling and completing the well rendered it incapable of getting its fair share of the production. We conclude that plaintiffs have not proven damage caused by defendant. We conclude further that if the well's efficiency was impaired as a result of completion operations, this was a fortuitous result of ordinary prudent operations.

Plaintiffs' demands are rejected. Counsel for defendant should, within thirty days, submit findings and conclusions and a formal judgment. The delay for appeal is not to begin until the formal judgment is signed.